Christopher Strawn for Mr. Doissaint. I'd like to reserve one minute for rebuttal. Okay, you have to help keep track of your own time. That's full time. I will. Mr. Doissaint seeks protection under the Convention Against Torture, fearing torture should he be returned to Haiti, and also seeks to adjust from asylee to lawful permanent resident status. I'd like to start with Mr. Doissaint's motion to reopen for relief under the Convention Against Torture based on his fear of being tortured as a criminal deportee. I think this is the most straightforward ground for remand because the board is required to consider all evidence of torture in the record, camel toss, and fail to do so in this case. Well, why don't you just jump right to it. How do you get around Villegas v. Mukasey, which basically states that detaining criminal deportees in Haiti's prisons does not constitute intent to torture? It's a horrible place, but it's got to be an intent to torture. Yes, I think Ine is directly on point here. In Villegas, the petitioner presented no evidence of specific intent. That is, the policy of putting Mexicans in, eventually that they might end up in institutions where conditions were horrible, was frankly a result of some ignorance and a benevolent policy of the Mexican government to try and take care of people with disabilities. Unfortunately, they didn't have the money or the resources to do so. What is your evidence of specific intent to torture him? Well, there are many different forms of evidence that we presented. I think the most straightforward one is the Griffin Declaration, which rebuts most of J.E. and the issues raised in Villegas. That is that putting Haitian criminal deportees in inhuman conditions is a deliberate and intentional policy and a program of intentional punishment. Now, as well, Mr. Dossant presented evidence that he would be tortured should he be released from custody if he survives that unlawful, indefinite, life-threatening detention, which was not addressed by the board. Secondly, Mr. Dossant presented evidence that he has no family in Haiti, and Professor Stotsky, as well as Ms. Karshen, corroborated that people without family in Haiti don't get food while they're detained, and they're subject to prolonged detention. This is a prima facie case. The board has granted on that ground in- But the family thing, the board has granted recognizing family conditions, but how does that go to specific intent here? Well, I think specific intent and torture are two separate elements. So a person may be tortured, but- You view the family absence as a form of torture because of the conditions? It is a form of torture. It heightens the risk of torture, but also Mr. Dossant is held and not released with no family as part of a policy to- giving money to them. So charisma is one of the listed grounds under the commission against torture. One of the questions I have is we have these cases that say if they didn't consider everything, you remanded. The fact is it's going to come back exactly the same way because this- most of his evidence really is kind of under the same umbrella that they've already considered in JE. So what is your best case for saying that they have to address each and every item that you've put forth in your motion for it to reopen? Well, I think that ENA is really on point. When the board says there is no evidence of specific intent, but there is some evidence of specific intent, then remand is required. And I would like to distinguish this from a matter of JE in terms of the specific intent evidence. We spent a significant amount of time in our brief on that. A matter of JE said that the policy of detaining criminal deportees was legal. Here, a real distinction in this case is that the evidence before the court, Griffin, Professor Stotsky, as well as Carson, document that this is actually an unlawful policy. It's contrary to Haitian law. What does that-what bearing does that have on torture? Well, that goes to specific intent. The fact that these people are being deported and held unlawfully means that it's not-indicates under this circuit's cases like Ahmed, certainly indicates an intention that is contrary to a benevolent legal policy of crime protection. Even the Department of State, in the unclassified cables that we attached, said there is really no evidence at all that deporting-that holding criminal deportees is an effective crime prevention policy. The U.S. Department of State, and this is at 274 and 275 of the record, and 278 and 279, even offered to personally arrange the transportation of criminal deportees to their hometowns. It also offered to fly Haitian government officials to the U.S. to interview these criminal deportees to ensure that they would not be detained indefinitely in these life-threatening conditions. Yet still, ten years later after Matter of J.E., these conditions continued and have even-and have even worsened. Well, things are very bad in Haiti. You know, the conditions there are terrible for people who aren't in prison and who haven't committed crimes. And so the fact that they know that they're not treating them humanely and they know that they are going to suffer more because they don't have family because of the conditions in the prison, how does that amount to intentional infliction of torture? Well, the evidence that we presented between the Griffin Declaration as well as Professor Stotsky and the statements of Karshen was that this is an intentional policy because the Haitian government wants to punish those who have been deported from the U.S., they're scapegoating them for Haiti's problems, and they're also trying to send a message to the deportees and their families and the general population that when you engage in activities that they don't approve of, then you will be punished. I'd also note that Professor Karshen at the Ministry of Record 14 describes the treatment as sheer, willful, deliberate cruelty. Again, Griffin describes it as intentional punishment. So this is not the case of Viegas or J.E. where there's a benevolent policy, where there's basically a benevolent policy of detaining somebody because they've committed a crime and it just happens that you're being detained in a country where prison conditions are bad. This is taking people who have committed no crime, unlawfully detaining them contrary to Haitian law in conditions which are inhuman and which has not been disputed. And we've shown the purpose. Now, when, and the government has not responded, or the board did not address this argument of no family or outside of custody. I think under INE, based on that ground, that would be grounds for remand. Now, when a person has shown a prima facie case for relief under the Convention Against Torture, it is also appropriate to remand that back to the IJ, exactly what this court did in Hamoui on a Convention Against Torture case, and SIRCU has also endorsed that response on Bonk of remanding back to an IJ. Now, I do want to address the 209C argument because it's a lifeline for asylees and I think the statutory argument is very good here. The government hasn't disputed that Mr. Douassant meets all five statutory elements to adjust from asylee to lawful permanent resident status. Their main argument is Robledo. And Robledo held, however, a distinct factual issue that a resident can't apply to become a resident. Mr. Douassant is not a resident. His residency has been terminated. He is an asylee. And the statute, and the government hasn't disputed that he maintains his asylee status. Therefore, he's in a procedural posture similar to Matter of K.A., an asylee applying to become a resident. And I think 209A and 209B relating to asylee and refugee adjustment, the clear statutory language supports that. 209B allows any alien-granted asylum to apply to become a resident. It doesn't have any restriction on having that resident status having previously been terminated or if you were a student earlier. Whereas 209A relating to refugees says that a refugee who has acquired LPR status cannot apply to become a lawful permanent resident. So basically, that would really force people, at least the statute as you think it's written, to basically, instead of filing for adjustment of status during the removal proceedings, to wait and then you have the time issue. And then you think you would fall in effect with outside the statute? Yes, that's correct. Once the order of removal has been entered, then Mr. Douassant meets all five statutory grounds. Now, this isn't unprecedented. We cited the Saw case, Perez-Martin, for not being able to get review of a denial of a Saw appeal until there's a final order of removal. And in another context, if you qualify for a duress waiver when you've provided material support to terrorism, for example, you're not allowed to apply for that waiver until you have a final order of removal. Now, I didn't cite that in the briefs, but I could provide a 20HA letter if that would be appropriate. I'd like to reserve a minute of rebuttal time. Thank you. May it please the Court. Matthew George for the Attorney General. Mr. Douassant has not provided any evidence of specific intent, as the Board found in this case. The closest he has is the Griffin Affidavit or Declaration and the testimony of Professor Stotsky. Both of those, the affidavit and the testimony, have no factual foundation. There's no way for the Board to evaluate the bare opinions that they offer on specific intent. In analogizing to the Federal Rules of Evidence, although they don't apply in immigration proceedings under Rule 702, experts may testify to a conclusion or in the form of an opinion if their testimony is based upon sufficient facts or data. In this case, we don't have that. Where does it say that in the Board's opinion? That's not in the Board's opinion. You see, the problem is that we really have to look at the Board's reopening decision, and we have to see if it considered each of the grounds for reopening. And so we can't go off record and make those kind of arguments because the Board didn't put that. So the question I have is your colleague ticked off a number of points that were made in the motion to reopen, and specifically the lack of family and also that 2006 Haitian court order or court decision are nowhere mentioned at all, nor is really specific intent. So why wouldn't we have to remand under our normal rules? Well, the Board did at the outset mention that Mr. Dessant has presented evidence, which he alleged provided a prima facie case for cat relief. That sort of generally encompassed all of his evidence. It then went on to discuss the evidence of indefinite detention, and then specifically that it found that none of his evidence amounted to evidence of specific intent. Now, ideally, yes, the Board would have provided us a lengthier discussion of the evidence, but as this court has recognized, the Board does not need to write an exegesis. It does not need to address and refute every specific piece of evidence or every specific legal argument that an alien may raise. And here the Board has indicated that it has considered all of the evidence, and it has found no evidence of specific intent. Well, where does it say that in the motion to reopen decision? On both pages 3 and 4 of the administrative record on page 3. Well, that's the whole decision, so that doesn't really help me. It's about three paragraphs long, so I'm just asking you, where did the Board address that the new evidence shows no specific intent, the Haitian court order is irrelevant for whatever reason, and that these affidavits of the professor and the lawyer, you know, don't do anything to change the matter of J.E.? Where do they say anything that shows they really addressed his evidence? There's no language specifically addressing those pieces of evidence. I mean, so in a way, the difficulty I'm having, maybe you can help me, I'll just tell you, is I read their decision, and basically they're basically saying J.E. is the law, but then they don't really address all the new evidence that he put in. And this was a timely motion to reopen, which, as you know, is kind of unusual. We usually are dealing with untimely motions. So I'm just a bit at a loss as to how we fit what they did into our case law, because I'm just not sure they addressed anything really in terms of his evidence. Well, like I said, they didn't do it in a manner that probably would be ideal, but they did say Mr. Dessant has presented evidence which he asserts sets out a prima facie case. So they've acknowledged that there is evidence there. They then specifically looked at the indefinite detention argument. They then looked at the specific intent generally. They did not go piece by piece through the evidence and address or refute each specific piece of evidence. But under this court's precedent, that's not required of the board. And I think, Your Honor, as you mentioned earlier, that remanding just for that may be a judicially inefficient means of resolving this case in that the board most likely would come to the same conclusion. We're just setting out a lengthier opinion. Yeah, although normally when we try to do things like that, then the Supreme Court tells us that we shouldn't be deciding those kind of things up here and whether we can't have a crystal ball as to what the board might do and we're supposed to send it back and let them tell us. So how do we reconcile what you're suggesting with what the Supreme Court seems to have told us? Well, I think as this court has held in many cases that the board isn't required to write an exegesis. I know I've said this before. But it's not required to go through every single piece of evidence or every single argument. Here it's done it in a very general way. Well, but, Your Honor, in a reopening, attempt to reopen, it really does have to deal with the new things that are put before it, does it not? Yes, Your Honor. I think the opinion here, ideally it would be longer, but it does indicate that the board has considered the issue of specific intent, and that's really the heart of the cat deferral claim in the motion to reopen, is that specific intent issue. And it said it twice, both on page 3 and then again on page 4. It's not saying that there's no evidence in that there's nothing that Mr. DeSant presented. It's saying there's no evidence of specific intent. If you have a court ruling that says it's illegal or unconstitutional to imprison these returned detainees, and let's just assume that's the law of the land in Haiti, and then the government decides in contravention of that law to go ahead and detain them, why wouldn't that be fairly significant evidence of specific intent? Well, as this court recognized in NURU, that specific intent element is separate than the decision to act extrajudicially. They're two separate means of analysis or elements, if you will, that must be gone through. Perhaps the board would find that is something that does go to specific intent. The problem is we just can't figure that out from this two pieces of paper. They might well find that that goes to specific intent. It would seem that it would go to specific intent. Now, maybe they would have another reason why it wouldn't, but we just don't know. Well, I think in this case we do, because the board has said twice that there's no evidence of specific intent. And it's set out generally that it's considered all of the evidence that Mr. Desson has presented. It's not done in a very – Basically, your best argument that the board said in its decision that it considered all of the evidence, and it specifically refers to some of the evidence, such as the testimony of Professor Stotsky, I guess. I don't think it referred specifically to the professor's testimony. It mentioned generally the indefinite detention evidence. It then generally addressed the lack of specific intent. And what you're saying is they considered everything, and they've said that that doesn't show specific intent, and so that's enough? Is that basically – Yes, Your Honor. The first paragraph under the cat heading there where they say this is the – makes out a prima facie case under the cat is sort of their general way of acknowledging all of the evidence that Mr. Desson has presented. Like I've said, I think, three times now. Yeah, ideally it would be greater, but – Okay. I got it. I'd like to address briefly the 209 issue. I don't think we said in our brief what our position would be with respect to Mr. Desson's asylee status. It's our position that his asylee status terminated when he was adjusted to lawful permanent resident status. And evidence of that is in the fact that in 2006 when he reapplied for relief, he again applied for asylum, and that was denied on statutory grounds. It would be inconsistent for him to say, I retain that status. However, I concede that I'm no longer statutorily eligible to apply or retain asylum status. That being the case, Robledo controls the 209 issue. And I'd also like to say that factually the only difference between this case and Robledo is the timing of the application. And the court should not allow the timing of an application to determine whether an alien receives benefits or is eligible for adjustment under that statute. Well, if he did prevail here, what would be the effect in a more global sense? What would that rule stand for with other people? It would essentially encourage, specifically with respect to Haitians, I would imagine Haitians to commit crimes to either apply for cat deferral, if this court were to so hold that specific intent was shown, or to possibly obtain the ability to adjust under Section 209, an opportunity that would not be available to aliens who had not committed crimes. So, I mean, if his perspective, if Mr. Dessant's perspective were accepted by this court, would that require that all Haitians that are deported based on their crimes in the United States, that they're entitled to deferral under cat? That would seem to be the case, Your Honor, that the United States would then be obligated to essentially provide permanent residence to Haitians who committed crimes in this country because they are no longer able to be deported to Haiti. Well, let me just stop. Is that Haitians who are LPRs or all Haitians? It would be all Haitians. Now, his status, I thought you were banking part of your argument on the fact that he was an asylee, and then that status terminated, and he took on his new status, so he couldn't get the other one back, and he couldn't reapply for the one he already had. So that's what I thought your argument was. Yes, Your Honor. Okay. So it seems correct to me that he would lose his asylee status, but what's the legal foundation for that? Is that by regulation or statute that he loses that? I don't have a specific statute or regulation to point at. That's just the position of our office is that he loses his asylee status. That's a nice position. I'm asking what's your legal support for it. I don't have that in front of me. I would gladly submit a 28-J on that issue. Okay. Thank you. Your time has expired. The board didn't say that it considered Mr. Glissant's evidence of specific intent and then weighed it and found it was not sufficient. Rather, it said there was no evidence of specific intent. I just gave a string cite on open brief of all the different evidence of specific intent. If a declaration of an expert saying this is an intentional policy to punish is not evidence of specific intent, then it is impossible for a person to show specific intent. And I think Ine is really on point. In Ine, there was a general prison conditions case. Generally, prison conditions were bad. Generally, medicine was withheld, partially on budget reasons. But there was also discrimination. And that was part of the reason why they were concerned about it. Same issue here. Okay. I hear you on the intent to punish. I'm having a little trouble getting from that to the intent to inflict torture. So could you? Well, I think putting them in. So the exact statement in the declaration is that putting them in these inhuman conditions, the torturous conditions that exist in the prisons, is an intentional policy to punish. That is, they're aware of the conditions there, and they're putting the people in there to punish them. Now, and we also presented the evidence of they were more likely than not beaten, kidnapped, et cetera. So there's the specific evidence as of the guards. But I think Nuru was on point here. There may be some intent to have a legitimate policy. We're punishing deserters. We're going to try and stop desertion. But we're also imposing these horrendous conditions on the person as part of a punishment of that person. Okay. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, McKeown, Callahan